[Crim. No. 14370. First Dist., Div. Three. Mar. 17, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL ANTHONY SCOLA, Defendant and Appellant.

COUNSEL

Finch, Castello & Tennant and David R. Finch for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Derald E. Granberg, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

BROWN (H. C.), J.—This is an appeal from a conviction of vehicular manslaughter (Pen. Code, § 192, subd. (3)(b)), arising out of a collision between a Camaro automobile driven by appellant, Paul A. Scola, and a Pontiac automobile driven by the deceased, Bonnie Lynn Schendel.

Appellant claims the evidence was insufficient and that the court erred in its refusal to give certain requested instructions. We disagree with both contentions and affirm the judgment.

In early evening on July 3, 1974, appellant was traveling north on Sonoma Boulevard, a four-lane thoroughfare, with a posted speed limit of 45 miles per hour. Decedent was traveling west on Magazine Street, a narrow, two-lane street, and was required by a stop sign to stop at the intersection where the collision occurred.

A woman who was also stopped at the intersection but on the other side, observed appellant coming down Sonoma, estimated his speed at 60 miles per hour and was of the opinion that he was in the curb lane. Another witness also noticed appellant before he reached the intersection and believed that he was in the fast lane, proceeding at a rapid but unspecified speed. A third witness observed Mrs. Schendel stop at the intersection and look both ways. Before she could proceed, three cars from behind her maneuvered through a Texaco station at the intersection and passed her. Afterwards, she started to move through the intersection. As she did so, appellant crashed into her car, crushed in its side, and pushed it sideways up the boulevard for a considerable distance.

Police, arriving at the scene of the accident, measured skid marks which they testified were left by appellant's automobile, curving from the curb lane toward the area of impact and from the area of impact to the final resting place of the car. These were measured as 96 feet from start of marks to point of impact and 90 feet from impact area to final

stopping place. The point of impact was 30 feet west of the east curb lane of Sonoma Boulevard or in the fast lane. Based upon the combined distance of the skid marks, coupled with additional road surface tests, a Highway Patrol officer trained in skid mark analysis calculated appellant's speed to be 78.8 miles per hour before he applied his brakes.

The offense of which appellant stands convicted is defined as a killing "[i]n the commission of an unlawful act, not amounting to a felony, without gross negligence; . . ." (Pen. Code, § 192, subd. (3)(b).) The section makes explicit the familiar rule of proximate cause in its concluding paragraph: "This section shall not be construed as making any homicide in the driving of a vehicle punishable which is not a proximate result of the commission of an unlawful act . . . or of the commission of a lawful act which might produce death, in an unlawful manner."

The state has the burden of proving proximate cause as it has the burden of proving every material element of a crime. (*People* v. *Bernhardt* (1963) 222 Cal.App.2d 567, 590-591 [35 Cal.Rptr. 401].) This burden is met if the state produces evidence from which it may be reasonably inferred that appellant's act was a substantial factor in producing the accident. (See Prosser, *Proximate Cause in California,* 38 Cal.L.Rev. 369, 381; Rest.2d Torts, § 431; *Greenfield* v. *Insurance Inc.* (1971) 19 Cal.App.3d 803, 810-811 [97 Cal.Rptr. 164].) ▆ The burden was met in this case by evidence that the victim stopped at the intersection, looked both ways and was then hit by a car at a speed far in excess of that designated by law as a safe speed for that road.

Appellant contends, however, that the state did not prove as a demonstrative reality that "but for" the speeding of appellant's car, the decedent would not have been hit. It was appellant's theory of defense at trial that he was driving at a speed within the speed limit when the decedent pulled out in front of him too late for him to avoid the ensuing collision. ▆ Recognizing that the jury found that he had been driving above the speed limit and recognizing also that there was substantial evidence for this finding, appellant now contends that the state did not prove that the victim entered the intersection at a time when appellant could have avoided the accident regardless of his speed.

▆ It is axiomatic that if the accident would have happened anyway, whether the defendant was negligent or not, then his negligence was not a cause in fact and cannot be a legal cause. (See *Arthur* v. *Santa Monica*

*Dairy Co.* (1960) 183 Cal.App.2d 483, 487 [6 Cal.Rptr. 808]; 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 622, p. 2903.) The burden upon the prosecution, however, is not to *disprove* any possible theory of causation raised by the defense. (See *People* v. *Kruse* (1939) 30 Cal.App.2d 559, 565 [86 P.2d 886].) ■ The only support in the record for appellant's theory of an unavoidable accident at any speed was his own testimony and that of his passenger. That testimony, however, was not accepted by the jury.

■ Appellant suggests that expert testimony would be required to prove that speed was a substantial factor in this accident. He likens the problem of proof in this case to that found in determining whether the failure to use seat belts is a proximate cause of injuries. Under the circumstances of the accident in *Truman* v. *Vargas* (1969) 275 Cal.App.2d 976 [80 Cal.Rptr. 373], the court concluded that it was not for nonexpert minds to determine what the consequences to plaintiff would have been if he had been using a seat belt. The court did, however, note that in other cases experts would not be needed, for example, to prove that one who is firmly strapped down by his seat belt will not be thrown out of the car. As the court noted: "No two accidents will be exactly the same. Each will have its own distinctive problems." (275 Cal.App.2d at p. 982.)

The causal connection between impact and speed in an intersection accident is one of common experience. (See *People* v. *Tracy* (1962) 199 Cal.App.2d 163, 168-169 [18 Cal.Rptr. 487].) If a car enters an intersection into another driver's lane, the faster the latter is going the less chance he will have to stop his car, maneuver out of the collision course or reduce his speed to one where the impact will be less destructive.

Appellant wishes the prosecution, in order to carry its burden of showing proximate causation, to be required to prove with mathematical certainty that decedent would not have been killed had appellant been driving from 15 to 35 miles slower. The law does not require such certainty. As Prosser has explained: "In the ordinary case the question [of proximate cause] becomes one of what would have happened if the defendant had acted otherwise. This is of course incapable of mathematical proof, and a certain element of guesswork is always involved. Proof of the relation of cause and effect can never be more than 'the projection of our habit of expecting certain consequents to follow certain antecedents merely because we have observed those sequences on previous occasions.' When a child is drowned in a swimming pool, no one can say with certainty that a lifeguard would have saved him; but the experience

of the community is that with guards present people are commonly saved, and this affords a sufficient basis for the conclusion that it is more likely than not that the absence of the guard played a significant part in the drowning. Such questions are peculiarly for the jury. Whether proper construction of a building would have withstood an earthquake, whether reasonable police precautions would have prevented a boy from shooting the plaintiff in the eye with an airgun, whether a broken flange would have made an electric car leave the rails in the absence of excessive speed, whether a collision would have occurred if the defendant had not partially obstructed the highway, and many similar questions, cannot be decided as a matter of law." (Fns. omitted.) (38 Cal.L.Rev., at pp. 382-383.)

The jury in the instant case could draw the reasonable inference from the evidence that the proximate cause of the accident was the excessive speed of appellant's vehicle.

Appellant also contends that instructions offered by him were erroneously refused by the court. Appellant was entitled to have the jury instructed on its theory of the case and had it requested specific instructions that focused on the relation of speed and the collision, the court would have had a duty to instruct in terms relating to the particular case. (*Self* v. *General Motors Corp.* (1974) 42 Cal.App.3d 1, 10 [116 Cal.Rptr. 575].) ■ The instructions which appellant requested, however, and which he now complains were improperly refused, were no more specific than those given and would have been no more favorable to appellant in clarifying the concept of proximate cause. Since repetitious instructions need not be given, the court correctly refused to give appellant's requested instructions. (See *People* v. *Chapman* (1962) 207 Cal.App.2d 557, 579-580 [24 Cal.Rptr. 568]; *People* v. *Sawyer* (1967) 256 Cal.App.2d 66, 77 [63 Cal.Rptr. 749].)

The judgment is affirmed.

Draper, P. J., and Good, J.,* concurred.

A petition for a rehearing was denied April 16, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.